## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **3:CR-21-136** |
| **v.** | : | **(JUDGE MANNION)** |
| **JOMAR IVORY,** | : | |
| **Defendant** | : | |

### M E M O R A N D U M

Before the court is the notice of appeal filed, through counsel, by defendant Jomar Ivory. Ivory was convicted of both counts of a misdemeanor Information, charging him with forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with prison staff while they were engaged in the performance of their official duties, in violation of 18 U.S.C. §111(a)(1), in a July 2021 jury trial held before Chief Magistrate Judge Mehalchick.

On October 12, 2021, Judge Mehalchick sentenced Ivory to an aggregate sentence of 18 months' incarceration, 9 months on each count to run consecutively. (Doc. 49).

On October 25, 2021, Ivory filed a timely appeal of his conviction and judgment of sentence to this court. (Doc. 54).

After being granted extensions of time, on April 26, 2022, Ivory filed his brief in support of his appeal. (Doc. 73).

On May 10, 2022, the government filed its brief in opposition to Ivory's appeal. (Doc. 74).

On May 16, 2022, Ivory filed his reply brief in support of his appeal. (Doc. 75).[1]

For the reasons set forth below, Ivory's appeal, **(Doc. 54)**, will be **DENIED**, and Ivory's conviction and judgment of sentence, **(Doc. 49)**, imposed by Judge Mehalchick will be **AFFIRMED**.

## I.     FACTUAL AND PROCEDURAL HISTORY

On May 11, 2021, a two count Information was filed by the government charging Ivory with forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with prison staff while they were engaged in the performance of their official duties, in violation of 18 U.S.C. §111(a)(1). (Doc. 1). Count 1 occurred on or about April 9, 2021, and Count 2 occurred on or about April 10, 2021. During the relevant time, Ivory was an inmate as USP Canaan. Ivory appeared before Judge Mehalchick on May 18, 2021, and pleaded not guilty to the misdemeanor Information.

A jury trial began on July 28, 2021, before Judge Mehalchick.

---

[1]The transcripts of the 3-day jury trial commencing on July 27, 2021, have been filed. (Docs. 59, 60 & 65). "N.T." connotes citation to the transcript.

After three days of testimony, on July 29, 2021, the jury found Ivory guilty on both charges contained in the Information. (Doc. 32).

On August 4, 2021, Ivory filed a Motion for Judgment of Acquittal. (Doc. 37).

On October 12, 2021, the court denied Ivory's Motion for Judgment of Acquittal. (Doc. 46).

Prior to sentencing, the court ordered a presentence investigation by the Probation Office.

The presentence investigation report, ("PSR"), was prepared on September 16, 2021, (Doc. 42), and it included a 2-level enhancement against Ivory for obstruction of justice, noting that:"[t]he defendant provided false testimony at trial. He willfully attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense; therefore, two levels are added." (PSR ¶18). The PSR also included three levels because the offense involved physical contact pursuant to U.S.S.G. §2A2.4(b)(1)(A). (PSR ¶21).

The PSR contained a concise summary of the offense conduct. (PSR ¶¶4–7). As summarized by the PSR:

> Ivory was an inmate at the United States Penitentiary Canaan, and he was scheduled to be released by the BOP on May 22, 2021. On April 9, 2021,

3

Ivory made a telephone call to his sister at around 9:00 a.m. During that telephone call, Ivory told his sister he was upset with the BOP's plan to place him in quarantine as a prerequisite [pursuant to COVID-19 protocol] to his release from prison. "He advised his sister that he was going to resist staff and force them to take him to the 'hole.' Jomar Ivory indicated that he would attempt to have staff assault him, so that he could sue them and become 'rich.'" PSR ¶5.

"Approximately 45 minutes after the telephone call, prison staff escorted Ivory to a lieutenant's office for a urinalysis because they believed he was under the influence of a narcotic." PSR ¶6. Once there, Jomar Ivory became combative and attempted to punch staff with a closed fist. He was placed in restraints and placed in the Special Housing Unit (SHU) after he was medically assessed.

Just before midnight on April 9, 2021, prison staff conducted a visual check on Jomar Ivory and noticed that he was lying next to his bunk and unresponsive to commands. When correctional officers entered the cell to assess Jomar Ivory's condition, he became combative and attempted to bite officers' hands as he was placed into restraints. Neither Jomar Ivory nor any staff member were injured during the two incidents. PSR ¶7.

Ivory was sentenced on October 12, 2021. (*See* Doc. 55, transcript). Ivory raised two objections to the PSR, namely, to an enhancement for obstruction of justice, and to an adjustment for physical contact during the offenses. After hearing argument on the objections, the court denied both. However, the court declined to assign a 3-level enhancement for physical contact, and found that a 1-level variance was appropriate for the defendant's actions. Thus, the court assigned a total offense level of 17 and a criminal history category IV resulting in a guideline imprisonment range of 24 months. (Doc. 55 at 22).

4

The court then weighed the guideline range with all other relevant §3553(a) factors and, then sentenced Ivory to an 18-month aggregate term of incarceration, consisting of terms of nine months on count one and nine months on count two of the Information, to run consecutively.

Ivory then timely filed his appeal of his conviction and judgment of sentence with this court on October 25, 2021. (Doc. 54).

## II.   LEGAL STANDARD

As the court in United States v. Omeojiako, 2017 WL 3420739, *1  (E.D. Pa. Aug. 9, 2017), stated:

> Pursuant to 18 U.S.C. §3402, "[i]n all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." *Id.* Federal Rule of Criminal Procedure 58(g)(2) governs the appellate procedure in petty offenses and other misdemeanor cases, and appeals to a district court in a case tried by a magistrate judge. In reviewing such an appeal, the district court uses the same standards of review applied by a court of appeals when reviewing a district court conviction. *See* Fed.R.Crim.P. 58(g)(2)(B); 18 U.S.C. §3742(h); *see also* United States v. Bursey, 416 F.3d 301, 305-06 (4th Cir. 2005). Thus, a district court reviews factual findings under the plain or clear error standard and legal conclusions under the *de novo* or plenary standard. *See United States v. Juvenile Male*, 554 F.3d 456, 465 (4th Cir. 2009); *United States v. Murphy*, 552 F.3d 405, 409 (4th Cir. 2009). Specifically, the plain error test requires "(1) an error; (2) that is 'clear or obvious' and (3) 'affected the defendant's substantial rights, which in the ordinary case means he or she must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different.'" *United States v. Azcona-Polanco*, —— F.3d —— ——, 2017 WL 3184723, at *1 (3d Cir. July 27, 2017) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). If these conditions are met,

5

the court will exercise its discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

Where a defendant on appeal challenges the sufficiency of the evidence, a court must determine whether a rational trier of fact could conclude beyond a reasonable doubt that the defendant was guilty. *United States v. McQuilkin*, 673 F.2d 681, 688 (3d Cir. 1982). In reviewing the record to determine the sufficiency of the evidence, it is not for the court to weigh the evidence or determine the credibility of the witnesses. *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008). The decision of the magistrate judge must be sustained if there is substantial evidence, taking the view most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013).

Additionally, in an appeal by a defendant convicted of misdemeanors regarding his sentence imposed by a magistrate judge, "a defendant is not entitled to *de novo* review by a district judge." U.S. v. Robinson, 2014 WL 1400197, *1 (D. N.J. April 9, 2014) (citing Fed.R.Crim.P. 58(g)(2)). "Rather, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.* "In reviewing a sentencing, a court applies the abuse-of-discretion standard, which applies to appellate review of all sentencing decisions." Id. (citing Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); United States v. Tomko, 562 F.3d 558, 567–68 (3d Cir. 2009)). Further, the district court "deferentially reviews the sentencing court's application of the §3553(a) factors to the facts of a case and must ensure only that the [sentencing] judge imposed the sentence that he or she did for the reasons that are logical and consistent with the factors set forth in section 3553(a)." *Id.* (internal quotations and

6

citations omitted). Further, "[t]he appellant bears the burden to demonstrate that a sentence was unreasonable." *Id*. (citation omitted).

## III. DISCUSSION

Magistrate judges have the power to enter a sentence for persons convicted of misdemeanors committed within a judicial district whenever specially designated to exercise that power by the district court or courts he serves. 18 U.S.C. §3401. The district court has jurisdiction over Ivory's appeal of his judgment of sentence imposed by Judge Mehalchick on October 12, 2021, pursuant to 18 U.S.C. §3402 ("In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgement of the magistrate judge to a judge of the district court of the district in which the offense was committed.").

The court will now address Ivory's appeal issues *seriatim*.

## I. Whether the magistrate judge erred in admitting evidence of the defendant's telephone call with his sister

Prior to opening arguments, Ivory objected to the government's use of a recording of the April 9, 2021 telephone call he made from the prison to his sister on the morning prior to the first charged offense. Ivory based his objection on the failure of the government to provide notice of its intent to use the recording under FRE 404(b). The government argued that the recording was intrinsic to the crimes

7

charged, and thus not subject to notice under Rule 404(b). The magistrate judge held that evidence of uncharged conduct is "intrinsic when they directly prove the charged offense", and then held that Ivory's telephone call was "intrinsic to the proof of the charged offense, and it [went] to the ultimate issues in this case." Thus, the magistrate judge found that the call was not subject to Rule 404(b).

The government then introduced evidence of Ivory's recorded call in its case-in-chief arguing that it was admissible because it was intrinsic to the two charges contained in the Information, and was relevant to show Ivory's motive, intent, and plan underlying both charges in Counts 1 and 2.

Ivory again objected to the government's use of the call based on its lack of Notice and he sought the court to prohibit the government from introducing the recording at trial arguing that it was not intrinsic evidence under Rule 404(b) and, considered as extrinsic evidence, it was not admissible.

No doubt that the government failed to file a Notice of Intent to Use FRE 404(b) Type Evidence regarding Ivory's call with his sister. Nonetheless, the record reveals that evidence of Ivory's recorded telephone call with his sister, made prior to the charged offenses, is proper under Rule 404(b) as evidence of his motive to commit the offenses and is intrinsic evidence regarding the offenses.

Since the appeal briefs of the parties summarizes the relevant trial testimony regarding the recorded call between Ivory and his sister, it is not fully repeated herein. (Doc. 73 & Doc. 74 at 14-15).

In the recorded call between Ivory and his sister Maria, which was admitted into evidence at trial, Ivory stated, in part, as follows:

> "I'm about to make them once they come and say I got to go and quarantine [prior to his May 22, 2021 release from prison] I'm about to make them restrain me and it's all going to be on camera ... they are going to have to give me they are going to have to release me because it's my max date anyway but I'm saying since you are willing to violate my rights, since you are willing to violate every code of federal regulation every human rights known to man I'm about to get broke up, I'm about to sue your dumb butt." Exhibit 4.2.

As the government, (Doc. 74 at 17-18), explains in its brief:

> The recording allowed the jury to hear the alleged plan of Ivory, and why he impeded the officers and tried to assault them. During that telephone call Ivory makes it clear that he was upset with BOP policy concerning quarantine. Exhibit 4.2. He advised her that he would resist staff and make them take him to the "hole" [SHU]. Id. He hoped by doing so, that staff would assault him and thereby give him cause to sue the Government. Id. He believed that he and his sister would profit from such a tort claim, and they would become rich. Id. As Ivory stated it, "we ain't going to live in no apartment no more we about to live in lovely lavish everything. You gonna be driving your Benz as matter of fact you don't even like driving so you gonna have you a chauffeur ..." Id. Less than an hour later Ivory's inexplicable behavior led staff to take him for a urinalysis where he swung his fist at a staff member, resisted efforts to place him in restraints and ended up being taken to the special housing unit. T.T. Day One 98–104. The telephone call corroborates the testimony of staff concerning Ivory's actions, and also explains why Ivory took a swing at staff and resisted their efforts to place him in restraints.

9

In addition to showing Ivory's plan, the recording is also intrinsic evidence since it is evidence that "directly proves the charged offense." United States v. Green, 617 F.3d 233, 248–49 (3d Cir. 2010) (citations omitted). The jury found that Ivory "did knowingly and intentionally forcibly assault, resist, oppose, impeded, intimidate, or interfere with a federal officer Ryan Swartfager, on or about April 9, 2021" and, "did knowingly and intentionally forcibly assault, resist, oppose, impede, intimidate, or interfere with a federal officer, Brian Paviglianti, on or about April 10, 2021," in violation of Title 18 U.S.C. Section 111(a)(1). (Doc. 32, at 1). Additionally, "[Section] 111 is a 'general intent statute' in which the government is only required to show that: (1) it was the defendant's conscious desire or purpose to act in a certain way or to cause a certain result, or that (2) the defendant knew that he was acting in that way or would be practically certain to cause that result." United States v. Green, 2022 WL 267897, *4 (E.D. Pa. Jan. 28, 2022) (citations omitted). The evidence of Ivory's recorded call with his sister was clearly admissible as part and parcel of the offenses charged in the Information.

Federal Rule of Evidence 404(b)(1) precludes the admission of other crimes, wrongs, or acts "to prove the character of a person in order to show conformity therewith." However, under Rule 404(b)(2), such evidence is admissible for legitimate evidentiary purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

10

"Rule 404(b) is a rule of general exclusion...." <u>United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017)</u> (citing <u>United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014)</u>; <u>United States v. Brown, 765 F.3d 278, 291 (3d Cir. 2014)</u> ("<u>Rule 404(b)</u> is generally a rule of exclusion.")). As such, "<u>Rule 404(b)</u> directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose [i.e., not to show the defendant's propensity to behave in a certain manner]." <u>*Id.*</u> (citing <u>Caldwell, 760 F.3d at 276</u>) (emphasis in original). Thus, "<u>Rule 404(b)</u> is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." <u>*Id.*</u> at 241.

"Intrinsic evidence need not be analyzed under <u>Rule 404(b)</u> because it is not '[e]vidence of any crime, wrong, or other act,' <u>Fed.R.Evid. 404(b)(1)</u>, but rather 'part and parcel of the charged offense.'" <u>U.S. v. Williams, 974 F.3d 320, 357 (3d Cir. 2020)</u> (quoting <u>United States v. Green, 617 F.3d 233, 245 (3d Cir. 2010)</u>). However, the Third Circuit has limited "the 'intrinsic' label [to] two narrow categories of evidence: (1) where the uncharged conduct directly proves the charged offense; and (2) where it is performed contemporaneously with the charged crime and facilitate[s] the commission of the charged crime." <u>*Id.*</u> (internal quotation marks and citation omitted).

In <u>Williams</u>, <u>id</u>. the Court explained, "[t]his suggests that the nature and scope of the evidence able to be deemed intrinsic will vary with the charged offense."

Here, Judge Mehalchick properly found that evidence of Ivory's recorded call with his sister proved some of the elements of the charged offenses and was intrinsic, and that this evidence was beyond the scope of <u>Rule 404(b)</u>. *See* <u>United States v. Pharis, 298 F.3d 228, 234 (3d Cir. 2002)</u> ("Once certain fraudulent conduct is properly included as part of the charged scheme, <u>Rule 404(b)</u> poses no obstacle because the evidence that is part of the charged crime does not fall under <u>Rule 404(b)</u>.") (citations omitted). As such, the government was not required to file a Rule 404(b) Notice regarding Ivory's call prior to trial and the court was not required to conduct an analysis under Rule 404(b).

**II. Whether the magistrate judge erred at sentencing in applying a three-level enhancement pursuant to U.S.S.G. §2A2.4(b)(1)(A)**

The PSR included an enhancement for obstruction of justice and as well as a 3-level adjustment for physical contact during the offense. Ivory objected to the 3-level adjustment arguing that there was no evidence of any contact in his case. Ivory argues that "[t]he evidence at trial repeatedly confirmed that [his] fist did not make contact with the officer and he did not bite the lieutenant", and that "[i]t is not sufficient that [his] actions (as the government argues) 'were designed to cause

12

physical contact.'" Ivory insists that "[t]he plain terms of the Sentencing Guidelines require physical contact."

The magistrate judge heard argument from counsel on the objection. (Doc. 55 at 3–21). The magistrate judge then held "[w]ith regard to the physical contact enhancement and having considered all of the relevant conduct of the defendant and the definition of offense under the sentencing guidelines to include all acts induced or willfully caused by the defendant, I do find that physical contact enhancement also applies and overrule [Ivory's] objection." However, she found that a "three-level increase is an over-representation of the conduct here" and that "a three-level increase is [not] warranted." The magistrate judge then concluded that "even if addressed in the form of a variance here to a one-level increase", Ivory's guideline term with such a variance was "still 24 months." (Doc. 55 at 21-22).

Thus, the magistrate judge applied the 3-level enhancement pursuant 2A2.4(b)(1)(A) during the first step of the sentencing process. She then addressed the enhancement "in the form of a variance" and found that a one-level enhancement was more appropriate for Ivory's actions. The one-level increase did not ultimately affect the guideline term. (Doc. 55 at 21-22). Ivory contends that the application of the 3-level enhancement for physical contact at step one was error.

Ivory contends that he should not have received any enhancement since his actions in resisting federal correctional officers did not result in physical contact. Physical contact was not required to prove Ivory committed the charged offenses under 18 U.S.C. §111. As the court in Green, 2022 WL 267897, *4 n. 6, noted:

> The Third Circuit has explicitly decided not to weigh in on whether the statute requires assaultive conduct, instead finding that a determination of whether forcible conduct existed sufficed to decide whether a violation of 18 U.S.C. §111 had occurred. _Green_, 543 F.App'x at 271, 272 n. 9. Therefore, this Court similarly does not address whether [defendant's] conduct rose to the level of assaultive conduct but assesses his guilt based on whether his conduct forcibly resisted, opposed, impeded, or interfered with the [federal officers].

Additionally, "[u]nder Section 111(a)(1), the government must prove beyond a reasonable doubt that the defendant 'forcibly ... resist[ed], oppose[d], impede[d], intimidate[d], _or_ interfere[d] with' [the correctional officers] while they were performing their duties." _Id_. at *3. "[T]o satisfy the force element, the government need only prove that the defendant committed one of the prohibited acts with an amount of force equaling 'more than mere passive resistance.'" _Id_. (citations omitted). _See also_ United States v. Dominguez-Maroyoqui, 748 F.3d 918, 921 (9th Cir. 2014) (holding that simple assault under 18 U.S.C. §111(a) is not a crime of violence under the Sentencing Guidelines' enhancement because it can be committed by physical contact not involving force, such as spitting on a federal officer).

In any event, Ivory's conduct did result in physical contact with the officers and the evidence adduced at trial clearly supported the court's imposition of the one-level enhancement Ivory received at sentencing. As the government, (Doc. 74 at 20), explains:

> Ivory's actions were designed to cause physical contact. Ivory knew that taking an aggressive swing at correctional officers would result in the staff members taking him to the floor and securing him with restraints. He indicated to his sister that that was his plan, in hopes that staff would go too far and he would be able to sue. Exhibit 4.2. Putting this in motion, Ivory not only endangered his own wellbeing but that of the Correctional Officers who must physically restrain Ivory and place him in hand restraints while he resisted.

> Further, Ivory's conduct did not stop once correctional officers placed him on the floor. According to the victim correctional officer and other witnesses, as staff were attempting to place Ivory in hand restraints he continued to resist. See e.g. T.T. Day One 101. Ivory's conduct resulted in physical contact with staff.

Thus, the magistrate judge properly increased Ivory's offense level initially by three levels pursuant to USSG §2A2.4(b)(1)(A) since his conduct was sufficient to establish that it involved physical contact with officers. See U.S. v. Beltran-Higuera, 642 Fed.Appx. 780 (9th Cir. 2016) (holding that the district court did not err in applying a three-level enhancement under U.S.S.G. §2A2.4(b)(1)(A) for "physical contact" since defendant could reasonably foresee that his actions could bring about physical contact with federal officers).

### III. Whether the magistrate judge erred in finding a 2-level upward adjustment for obstruction of justice under U.S.S.G. §3C1.1

The PSR found that obstruction of justice is warranted because "Jomar Ivory willfully attempted to obstruct or impede the administration of justice. During trial, Jomar Ivory falsely testified that he was assaulted by prison officials without cause and that he did not assault them as charged and convicted." (PSR ¶9). The magistrate judge concurred with the PSR and, in overruling Ivory's objection to the obstruction of justice enhancement, stated, "I do find the totality of the evidence presented at trial and the conviction do warrant the application of the obstruction of justice enhancement." (Doc. 55 at 21).

Ivory argues that his testimony at trial was not necessarily false, and that his view of his actions simply differed from the testimony of government witnesses. He contends that it was not necessary for the jury to disbelieve his testimony to find him guilty of the charged offenses. Thus, Ivory claims that the magistrate judge erred in adjusting his Guidelines sentence two-levels upward under U.S.S.G. §3C1.1, for obstruction of justice, due to his alleged false testimony at trial.

On appeal, the court "review[s] adjustments under U.S.S.G. §3C1.1 under a two-part standard: factual determinations for clear error, and legal interpretation and application of the Sentencing Guidelines under a plenary standard." U.S. v. Panaro,177 Fed.Appx. 235, 236 (3d Cir. 2006) (citation omitted).

16

As the Third Circuit in U.S. v. Napolitan, 762 F.3d 297, 311-12 (3d Cir. 2014), explained:

> Section 3C1.1 provides for a two-level enhancement if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the ... prosecution" through conduct that related to "the defendant's offense of conviction." U.S.S.G. §3C1.1. The commentary provides that offering perjurious testimony constitutes an obstruction of justice. *See* U.S.S.G. §3C1.1 cmt. n. 4(B). A defendant who testifies under oath at trial commits perjury within §3C1.1 if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

When the trial court applies the perjury enhancement it must make an express finding that the defendant committed perjury, i.e., "gave false testimony concerning a material matter with the willful intent to mislead the jury." *Id*. at 313-14 (citations omitted). As such, the trial court must make explicit factual findings when it decides to impose the perjury enhancement. "Application of §3C1.1 is not discretionary", and "[i]f a district court determines that an 'accused has committed perjury at trial, an enhancement is required.'" *Id*. at 315 (citations omitted).

The specific factual findings by the magistrate judge that Ivory had obstructed justice by providing false testimony at his trial are not clearly erroneous. As in Panaro, 177 Fed.Appx. at 236, "[t]he record [in Ivory's case ] reveals, …, that most-if not all-of [Ivory's] trial testimony was rejected by the jury and, in a number

of instances, was directly refuted." As the court in <u>Napolitan</u>, 762 F.3d at 315, concluded:

> In evaluating the falsity of [Ivory's] testimony, "the sentencing court [is bound] to accept the facts necessarily implicit in the verdict." <u>*Boggi,*</u> 74 F.3d at 479. If the record also provides support for findings that a false statement was material and willful, the enhancement must be applied. <u>*Dunnigan,*</u> 507 U.S. at 98, 113 S.Ct. 1111 ("Upon a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines.").

Here, the testimony of the officers and the documentary evidence showed that Ivory's testimony was both false and material under <u>U.S.S.G. §3C1.1</u>. If Ivory's testimony had been believed by the jury, it would have tended to show that he did not violate <u>18 U.S.C. §111</u> and the jury's verdict clearly indicated that Ivory committed both charged offenses. (*See* Doc. 32). Thus, the magistrate judge's specific findings that Ivory obstructed justice and deserved a 2-level upward adjustment under <u>U.S.S.G. §3C1.1</u> was not error since the government met its burden of proving by a preponderance of the evidence that Ivory perjured himself.

## IV.   CONCLUSION

Having reviewed the transcript of Ivory's trial before the magistrate judge and the briefs of the parties regarding Ivory's appeal, the court finds that substantial evidence exists to support the defendant's conviction and the judgment of sentence imposed by the magistrate judge. Therefore, the court will **DENY IN ITS**

**ENTIRETY** Ivory's appeal of his conviction and sentence, **(Doc. 54)**, and will **AFFIRM** the magistrate judge's judgment, **(Doc. 49)**, imposing a sentence on Ivory of 18-months' imprisonment. An appropriate Order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Court**

**Dated: September 29, 2022**
21-136-01

19